UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Michael Alexander,

        Plaintiff

v.

Corey Chadwick,

        Defendant

Case No. 2:22-cv-01084-CDS-NJK

**Order Resolving Outstanding Motions**

[ECF Nos. 70, 96, 104]

        Defendant Corey Chadwick moves for partial summary judgment seeking dismissal of all causes of action brought by plaintiff Michael Alexander. Def.'s mot., ECF No. 70.[1] Alexander also seeks summary judgment against Chadwick. Pl.'s mot., ECF No. 104.[2] As is outlined in this order, Chadwick's motion for summary judgment is granted in part, denied in part, and denied as premature in part, and Alexander's motion is granted in part, denied in part, and denied as premature in part.[3]

**I.    Background**

        Alexander and Chadwick entered into a contract on February 21, 2019 ("Agreement") wherein Alexander would provide Chadwick with 250 Bitcoin in "exchange for Chadwick trading Bitcoin with the mutual desire of realizing a profit." Agreement, ECF No. 58 at 30–32. Alexander, throughout the contract, is referred to as "Investor." *Id.* The Agreement stated that "Chadwick, at his sole discretion, shall trade the Agreement Quantity of Bitcoin initially on BINANCE later as the amount of the BTC grows on other exchanges. Chadwick shall provide

---

[1] This motion is fully briefed. *See* Opp'n, ECF No. 57; Reply, ECF No. 65. I struck two previous versions of the motion for summary judgment due to procedural errors but explained that Alexander need not file a new response. ECF No. 69 at 1.

[2] This motion is fully briefed. *See* Opp'n, ECF No. 108; Reply, ECF No. 110.

[3] Chadwick also moved to strike Alexander's reply in regard to his original summary judgment motion filed at ECF No. 95 as improperly attaching additional evidence. ECF No. 96. Because that summary judgment motion (ECF No. 89) has been withdrawn as moot (ECF No. 119), Chadwick's motion to strike docketed at ECF No. 96 is denied as moot.

access to the BINANCE and other trading accounts to Investor." *Id.* at 30. The Agreement set out that "[t]rading profit shall be shared . . . equally (50/50). Chadwick and Investor intend to keep profit within the BINANCE trading account to continue to grow the value of the account." *Id.* Further, "Chadwick shall provide a monthly summary of the account value, including increases in value and losses against principal BTC amount, if any, [and] [u]pon the request of either Chadwick or Investor, distribution of profit may be made after 90 days of trading." *Id.* The Agreement lasted for one year and would automatically renew for a second year but could be terminated after the first year "upon fourteen (14) days prior written notice." *Id.* at 31. It also specified that the "parties' expectation is that this Agreement shall remain in force in perpetuity." *Id.* The Agreement stated that:

> The occurrence or any one or more or the following events shall constitute on "Event of Default" under this Agreement:
>
> (a) In connection with Chadwick's trading efforts, failure to generate any positive return in any given monthly period.
>
> (b) Investor shall fail to perform any of the other terms, covenants, conditions or obligations required to be performed by Investor under the terms of this Agreement (including providing a summary of trading information and account values quarterly) which is not remedied within the time period specified in the Agreement or five (5) days after written notice thereof to Investor;
>
> In the event of an Event of Default, Investor shall be entitled to the recovery of the Agreement Quantity of Bitcoin and any earned Bitcoin not yet distributed (subject to Chadwick's 50% interest in any earned Bitcoin.

*Id.* (missing parenthesis in original).

It is not disputed that Alexander delivered the 250 Bitcoin to Chadwick. ECF No. 58 at 5; ECF No. 70 at 5. It is also not disputed that Chadwick began trading at least some of the Bitcoin for alternative cryptocurrencies. ECF No. 57 at 8; ECF No. 70 at 5. The parties argue about the extent to which Chadwick then provided Alexander information about the cryptocurrency. *See* ECF No. 70 at 5 (explaining that Binance did not issue account statements

so Chadwick would send screenshots of Alexander's account information over text message, a method for which Alexander did not object); ECF No. 57 at 6 (pointing to 2019 texts messages in which Chadwick described the account's Bitcoin profit and screenshots only showing bitcoin in the Binance account—without mention of alternative cryptocurrencies (citing ECF No. 58 at 1862–63)). Alexander asserts that after he began to seek additional information from Chadwick, Chadwick provided unverifiable spreadsheets but, on August 13, 2021, declared he had "saved ALL the coin[.]" ECF No. 57 at 5 (citing ECF No. 58 at 1856).[4]

The parties argue extensively about the extent of Chadwick's trading activity, where the original Bitcoin now resides, and the current value—and form—of the cryptocurrency Alexander is entitled to under the contract. Following multiple discovery requests, Alexander retained an expert, Nicholas Himonidis, to "examine, forensically audit, trace, analyze, and review all the transaction data within the Binance Accounts, including external transfers from Binance to other platforms and digital cold-storage wallets owned and controlled by Defendant Chadwick pertaining to Plaintiff Michael Alexander's Bitcoin and cryptocurrency." ECF No. 104 at 9. Himonidis produced a report, and then an updated report, based on the disclosures provided by Chadwick. *Id.* In a May 1, 2025 hearing on Alexander's emergency motion for a temporary restraining order (ECF No. 105), I heard testimony from Himonidis. ECF No. 117. Hearing that Chadwick had not turned over many records necessary for Himonidis to conduct a full forensic accounting, I ordered the parties to meet and confer to come up with a protective order that would allow Himonidis to conduct such an accounting of Chadwick's accounts that

---

[4] In his opposition, Alexander changes "coin" to "Bitcoin" in brackets while quoting this text message. *Compare* ECF No. 58 at 1856 ("saved ALL the coin"), *with* ECF No. 57 at 6 ("saved ALL the [Bitcoin]" (alteration in motion)). Multiple cryptocurrencies can be referred to as "coins" and, in fact, are referred to in that manner in this very lawsuit. Although most of Chadwick's screenshots in his text messages attached in ECF No. 58 show only Bitcoin being traded in 2019, this message was sent along with screenshots nearly two years later. *See* ECF No. 58 at 1865. Because of the size and image quality of the exhibit, I am unable to tell the contents of the 2021 text screenshots. *See* ECF No. 58 at 1865. However, it is entirely possible from the information before me that Chadwick is referring to cryptocurrency other than Bitcoin, which could potentially make Alexander's alteration highly misleading. Alexander and his counsel are cautioned that attempts to mislead the court may be met with sanctions.

hold Alexander's cryptocurrency. The parties produced a joint stipulation (ECF No. 121), which was accepted by the court (ECF No. 123).

## II.    Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

### III.   Discussion

#### A.  Breach of contract

Alexander alleges that Chadwick breached the Agreement by, among other theories:

a.   Refusing to share trading profits;

b.   Failing to keep the profit within the Binance trading account;

c.   Failing to provide monthly summary of account value, including increases and losses against the principal Bitcoin amount;

d.   Failing to distribute profits upon request by Alexander after ninety days of trading; and

e.   Failing "to return the original 250 BTC to Alexander as demanded."

Compl., ECF No. 1 at ¶ 22. Chadwick, in his motion for summary judgment, contests each argument here. He argues first that Alexander has never requested his share of the profits, and that even before initiating the lawsuit Alexander has only ever requested a return of the 250 Bitcoin or for all the cryptocurrency in the account to be turned over. ECF No. 70 at 14 (citing Sept. 10, 2021 demand letter, ECF No. 70-5 ("[D]emand is hereby made to turn over the wallets or other accounts and all of the BTC or other crypto-currency comprising the account of Michael Alexander. . . . This is an immediate demand and these crypto assets must be returned and under Mr. Alexander's control no later than close of business September 16, 2021.")). He argues that the agreement never required the cryptocurrency be kept in the Binance account, but instead gave Chadwick significant discretion to trade Alexander's cryptocurrency assets. *Id.* at 14–15. Chadwick argues that he did not provide Alexander the monthly summaries, but Alexander did not provide the written notice as required by ¶ 8(b) of the Agreement prior to the contract's expiration. *Id.* at 15. Chadwick also suggests that ¶ 8(b) does not apply to him because it discusses only the failure of the "Investor" (defined earlier to be Alexander) to perform his duties. *Id.* at 15 n.26. Chadwick further argues that Alexander waived his right to insist on strict compliance with the monthly notice requirement because throughout the course of their

agreement, Alexander never insisted on strict compliance to this term (or the term requiring monthly profit). *Id.* at 15–16 (citing *Nevada Nat. Bank v. Huff*, 582 P.2d 364, 369–70 (Nev. 1978)). Finally, Chadwick argues that Alexander is not entitled to the return of "the original BTC" because cryptocurrencies are fungible and the original 250 Bitcoin no longer exist. *Id.* at 17.

In response, Alexander largely points to the findings in the Himonidis report (ECF No. 57 at 13–21) but presents some piecemeal arguments regarding the legal questions as to the breach of contract raised by Chadwick (ECF No. 57 at 21–22). Alexander argues that Chadwick failed to provide a monthly accounting summary and failed to give Alexander access to the Binance account, constituting an "Event of Default" under ¶ 8(b). ECF No. 57 at 22. He argues that Chadwick only produced the Binance summary now available "after much threat of a motion to compel . . . ." *Id.* He also states that the agreement "was for profits in Bitcoin only, not alt-currency or cash." *Id.* at 7. According to Alexander,

> Chadwick assured Alexander that the amount of the 250 Bitcoin would not be at risk because of his trading on the highs and lows in the value of Bitcoin. Alexander understood from Chadwick that when he was trading Bitcoin, he could take either long or short possessions, depending upon how Bitcoin is trending, whether it's going up or going down, and make profits just like some do with stocks. Alexander knew of the risk/reward of value fluctuations of Bitcoin and was willing to take that risk for the chance of an increase in Bitcoin value; Chadwick promised to increase the number of Alexander's Bitcoin, but not by ever selling or liquidating the original amount of 250 Bitcoin.

*Id.* at 5.

"The goal of contract interpretation is to 'discern the intent of the parties.'" *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 673 (Nev. 2021) (quoting *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 448 P.3d 568, 572 (Nev. 2019)). A court applying Nevada contract law "initially determines whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written.'" *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (quoting *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012)). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way, but ambiguity does not arise simply because

the parties disagree on how to interpret their contract." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (citation omitted). "In particular, an interpretation is not reasonable if it makes any contract provisions meaningless, or if it leads to an absurd result." *Nevada State Educ. Ass'n*, 482 P.3d at 673 (citing *Washoe Cnty. Sch. Dist. v. White*, 396 P.3d 834, 839 (Nev. 2017)).

I start by noting that the contract drafting is incredibly poor, leaving significant questions about its terms. Paragraph 8(b), the default provision for failure to perform any of the terms, covenants, conditions, or obligations of the contract (other than the failure to generate a positive return in any given monthly period), states that if any such problem "is not remedied within the time period specified in this Agreement or five (5) days after written notice thereof to Investor[,]" the contract will be in default and Alexander will be "entitled to the recovery of the Agreement Quantity of Bitcoin and any earned Bitcoin not yet distributed (subject to Chadwick's 50% interest in any earned Bitcoin." ECF No. 58 at 31 (missing parenthesis in original). What constitutes the "time period specified in this Agreement" is wholly unclear. The Agreement specifies that it shall be for one year, that it will automatically renew for another year, and that the "expectation is that this Agreement shall remain in force in perpetuity." *Id.* Chadwick uses this to argue that the Agreement expired on February 21, 2021, two years after it was signed, and therefore the first written notice he received—Alexander's September 10, 2021 demand letter—was sent long after the contract finished. ECF No. 70 at 9. This is certainly possible. However, the concluding phrase, that the "expectation" is that the Agreement could exist in perpetuity, implies that the contract may continue to exist even after the second year. There are no other provisions that invite additional renewal or expiration—automatic or otherwise—so I find that this provision has several reasonable interpretations and is therefore ambiguous as to the term of the contract. However, I also note that even if the contract did expire after two years, Chadwick could still potentially be in default of the contract. As is explained in ¶ 8(b), the written notice requirement is one of two ways default could occur; as relevant here, default occurs if failure to perform is "not remedied within the time period

specified in this Agreement . . . ." ECF No. 58 at 31. Thus, assuming "time period of the contract" refers to its term, if (a) Chadwick acted in a manner in violation of ¶ 8(b) during the term of the contract, (b) it was "not remedied," and (c) the contract has since expired, then it still appears that he could be in default, even if no written notice was provided by Alexander during the contract's term.

However, ¶ 8(b) is left even more confusing because it appears to mix up the party names. Alexander, the "Investor," had only one obligation under the Agreement: to provide Chadwick with the 250 Bitcoin. *See* ECF No. 58 at 30–31. By contrast, the Agreement, which refers to Chadwick by name, outlines a list of his obligations, including providing monthly summaries, providing access to the Binance account and other trading accounts, and paying Alexander a return. *Id.* In ¶ 8(b), however, it implies that *Investor*, not Chadwick, has a host of "covenants, conditions or obligations required to be performed . . . (including providing a summary of trading information and account values quarterly) . . . ." *Id.* at 31. Chadwick acknowledges this was likely an error. ECF No. 70 at 9 ("Presumably, Alexander's lawyer meant to make this provision applicable to Chadwick and not Alexander and intended to reference monthly accounting and not quarterly accounting. This is an example of the sloppy draftsmanship that went into the Agreement."). By using this to support his arguments, I interpret Chadwick's motion as acceding that this was, in fact, a scrivener's error and the contract should be read correctly as follows:

> (b) **Chadwick** shall fail to perform any of the other terms, covenants, conditions or obligations required to be performed by **Chadwick** under the terms of this Agreement (including providing a summary of trading information and account values quarterly) which is not remedied within the time period specified in the Agreement or five (5) days after written notice thereof to **Chadwick**;

Absent further evidence from the parties, I find that the contract should be read as such.[5]

---

[5] In a throwaway argument, Chadwick asserts in response to Alexander's motion that "It may be that this is an example of sloppy draftsmanship by Alexander's lawyer. However, to the extent that any portion of the Agreement is ambiguous, any ambiguity should be construed against the drafter, in this case Alexander." ECF No. 108 at 18 (citing *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015)).

The Agreement does not specify how profits would be calculated, or when. It states only that "[t]rading profit shall be shared by Chadwick and Investor equally (50/50). Chadwick and Investor intend to keep profit within the BINANCE trading account to continue to grow the value of the account." ECF No. 58 at 30. Alexander seems to suggest that this is the result of conversations that occurred prior to the contract agreement that Chadwick would not trade Bitcoin for other currencies or remove the Bitcoin from the Binance account. *See* ECF No. 57 at 5–6. Thus, the logic goes, there would have been no need for additional provisions to the contract regarding profit calculation or distribution—if the Bitcoin profits remain in the Binance account, they would constitute the current Bitcoin amount less the original 250 BTC investment and could be split evenly and distributed according to the other provisions in the Agreement. *Id.* However, as Chadwick points out in his reply, Alexander's evidence to support this interpretation of the contract is extrinsic and would thus violate Nevada's parol evidence rule "where a written contract is clear and unambiguous on its face . . . ." ECF No. 65 at 5 (quoting *Klabacka v. Nelson*, 394 P.3d 940, 946 (Nev. 2017)). The contract states that "Chadwick, at his sole discretion, **shall trade the Agreement Quantity of Bitcoin initially on BINANCE later as the amount of the BTC grows on other exchanges.**" ECF No. 58 at 30 (emphasis added). I find that the Agreement was unambiguous in allowing Chadwick to trade on platforms other than Binance at his "sole discretion." The fact that the Agreement later says that "Chadwick and Investor *intend* to keep profit within the BINANCE trading account" does not make this a contractual requirement. *Id.* (emphasis added). Thus, I grant Chadwick's motion for summary judgment and dismiss Alexander's failure "to keep profit within the BINANCE trading account to continue to grow the value of the account" theory of contract breach.

---

Because the evidence before me suggests the former, I find that, absent some additional conflicting evidence, this is likely nothing more than a scrivener's error.

However, I find it ambiguous whether the Agreement required that Chadwick keep Alexander's cryptocurrency in Bitcoin, or whether Chadwick was permitted to trade it for alternative cryptocurrencies. Chadwick had "sole discretion" to trade, but the Agreement specifically describes the growth of "BTC on other exchanges." *Id.* Further, the default provision describes the profit as "earned Bitcoin . . . (subject to Chadwick's 50% interest in any earned Bitcoin." *Id.* (missing parenthesis in original). Thus, I find that the Agreement leaves unclear whether Chadwick was permitted to trade Bitcoin for alternative cryptocurrencies. This also remains a dispute of material fact, and therefore, to the extent that Alexander's motion for summary judgment is based on Chadwick having traded for alternative cryptocurrencies, his summary judgment motion is denied.

"[P]arol evidence is admissible to prove a separate oral agreement regarding any matter not included in the contract or to clarify ambiguous terms so long as the evidence does not contradict the terms of the written agreement." *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004). Here, as evidence that the Agreement was only intended to involve Bitcoin and no other cryptocurrency, Alexander points to 2019 text messages in which Chadwick repeatedly referred to Bitcoin profits on the account. ECF No. 57 at 6–7 (citing ECF No. 58 at 1860–62). Though scant, I find that, based on this evidence and the ambiguity of the contract, there remains a dispute of material fact as to whether Chadwick was permitted to trade the Bitcoin for alternative cryptocurrencies under the contract.

Having analyzed the ambiguity of several provisions of the contract, I now turn to Alexander's contract breach theories. The first alleged breach of contract occurred when Chadwick refused to share trade profits. ECF No. 1 at ¶ 22. Although Chadwick argues that Alexander never requested them, I find that there remains a dispute of material fact as to whether Chadwick's failure to produce profits to Alexander constituted a breach of the contract. I have already found that the contract is ambiguous as to term length, but I now find that there remains a dispute of material fact as to when—and whether—the contract has, in fact

expired based on its term provision. Chadwick himself argues that the contract expired on February 21, 2021. ECF No. 70 at 9. If this were true, Chadwick would owe Alexander the profit made, and has not paid to this point. Chadwick argues that Alexander refused the payout, but points to only an August 22, 2021 meeting and the September 10, 2021 demand letter as examples of this refusal. ECF No. 70 at 14 (citing Chadwick decl., ECF No. 70-2 at 3). In the event that the contract did, in fact, expire on February 21, 2021, Chadwick does not account for five months in which the contract had supposedly lapsed. This is not the only example of a continuing dispute of material fact regarding the payout, but this alone is sufficient to deny summary judgment as to Alexander's first breach of contract theory.

As to Chadwick's failure to provide monthly summaries of the account value, Chadwick's notice argument has already been addressed. His waiver affirmative defense is preserved, but I do not find that he is entitled to summary judgment on it at this time. Before the court are a series of text messages from February, March, and April 2019 in which Chadwick was providing regular updates on the account balance. *See* Chadwick and Alexander text messages, ECF No. 58 at 1850–1863. In the light most favorable to Alexander, these could account for a continuing expectation of compliance with the "monthly summary of the account value, including increases in value and losses against principal BTC amount, if any[.]" Agreement, ECF No. 58 at 31. Chadwick can certainly argue that Alexander's failure to request termination of the contract constituted a waiver under Nevada contract law, but in the light most favorable to Alexander, Chadwick is not entitled to summary judgment on this theory of contract breach. However, Alexander is also not entitled to summary judgment on this issue, as requested in his motion. ECF No. 104 at 15. Specifically, because the affirmative defense is preserved and has some factual support, even though the evidence currently before the court suggests that a monthly accounting was not conducted, the evidence in the record is sufficient to raise a dispute of material fact as to the possibility that Alexander waived this provision.

Regarding Chadwick's alleged failure to distribute profits upon request by Alexander after ninety days of trading, I deny summary judgment on this theory as well. As has been discussed prior, there is a dispute of material fact as to when, and whether, the Agreement expired. Alexander's September 10, 2021 demand letter, or even the August meeting before it, could have constituted notice for which well over ninety days has now passed with no profit payout.

I also deny Chadwick's motion to the extent it seeks summary judgment on the "failure to return the original 250 BTC" theory. I acknowledge that Bitcoin is fungible and therefore the "original" 250 Bitcoin may be unrecoverable, but as is clear from Alexander's motion practice and oral argument, this simply means a return of 250 Bitcoin to Alexander, the amount he initially provided to Chadwick as per their Agreement. As I have found, the Agreement default ¶ 8(b) is intended for Chadwick, not Alexander. I find that there remains a dispute of material fact as to whether Chadwick violated several portions of the Agreement—as is outlined above— and therefore whether Alexander is "entitled to the recovery of the Agreement Quantity of Bitcoin and any earned Bitcoin not yet distributed (subject to Chadwick's 50% interest in any earned Bitcoin." ECF No. 58 at 31 (missing parenthesis in original).

In his motion for summary judgment, Alexander also alleges two additional theories of contract breach. Alexander argues that Chadwick failed to generate positive returns each month, in breach of the Agreement. ECF No. 104 at 16. He points to excel spreadsheets showing negative returns "on every page." *Id.* (citing ECF No. 104-1 at 122–38). The Agreement would default if, "[i]n connection with Chadwick's trading efforts, [he] fail[ed] to generate any positive return in any given monthly period." ECF No. 58 at 31. Chadwick responds that this provision is ambiguous because "[i]n connection with Chadwick's trading efforts" is unclear about whether losses can include market fluctuations or only losses as a result of Chadwick's actions, and what actions those might include. ECF No. 108 at 19–20. He also states that the negative returns Alexander discusses on the spreadsheets reflect daily values of coins and do not represent

monthly losses. *Id.* at 20. I agree that there remains a dispute of material fact regarding what the Agreement means by this provision. It is wholly unclear how monthly losses were to be measured, and none of the evidence before me would allow me to conclude that such losses actually occurred. Therefore, I deny summary judgment as to this theory.

Alexander also argues that Chadwick's failure to provide access to the Binance account constituted breach. ECF No. 104 at 14–15. Alexander alleges that it was not until he filed multiple motions and court orders that he was he given any access to the account, in violation of the Agreement's clear requirement that "Chadwick shall provide access to the BINANCE and other trading accounts to Investor." *Id.* (citing Agreement, ECF No. 58 at 30). In opposition, Chadwick throws out a number of responsive arguments, including (1) he did provide Alexander with login access to the Binance account on February 24, 2019; (2) "[e]ven if he did not," Alexander has not provided any evidence of written notice "which is required by the Agreement"; and (3) the Agreement ended on February 21, 2021 and "does not provide for the survival of any obligations post-termination." ECF No. 108 at 18–19. Although Chadwick purports to have "set forth above" in his opposition how he provided Alexander with the Binance account login information on February 24, 2019, I cannot find any previous reference to it in his opposition or any other document. *Id.* at 18. In fact, assigned Magistrate Judge Nancy J. Koppe repeatedly ordered extensions to discovery deadlines because of Chadwick's failure to provide Alexander with full access to the Binance account, including the login information. *See* ECF No. 93; ECF No. 101. As was discussed previously, it is unclear when the contract concluded, but the language is such that even if written notice *was* required, this was one of two possible methods by which Alexander could assert that default occurred, the other being a failure to perform "any of the terms . . . to be performed" that was "not remedied within the time period specified in this Agreement . . . ." ECF No. 58 at 31. Because the contract is vague as to its expiration, it remains a dispute of material fact as to whether, and if, the contract has actually expired. In this case, however, this does not bar summary judgment for Alexander. If the

1  Agreement expired, as Chadwick argues, in February 2021, then his failure to provide Alexander

2  access until 2025 constitutes a breach. On the other hand, if the Agreement continued to run,

3  whether to some endpoint in 2021 or in perpetuity, Alexander's September 2021 demand letter

4  constituted written notice of Chadwick's failure to perform his obligations under the contract.

5  It now being 2025, nearly four years—unquestionably more than the five-day notice period—

6  have passed since this breach. Therefore, I grant summary judgment to Alexander on the breach

7  of contract theory that Chadwick failed to provide access to the Binance account.

8      Both parties raise brief arguments about damages under the contract in their respective

9  motions. ECF No. 70 at 18; ECF No. 104 at 16–17. Having already determined that Alexander is

10  entitled to summary judgment on the account access breach of contract claim, I find that, based

11  on the contract, Alexander is entitled to damages as set forth in the default provision. Therefore,

12  Alexander "shall be entitled to the recovery of the Agreement Quantity of Bitcoin and any earned

13  Bitcoin not yet distributed (subject to Chadwick's 50% interest in any earned Bitcoin." ECF No.

14  58 at 31 (missing parenthesis in original). Alexander's motion for summary judgment on the

15  breach of contract claim is thus granted in part and denied in part, and Chadwick's motion for

16  summary judgment on the breach of contract claim is denied.

17      **B.  Breach of implied covenant of good faith and fair dealing**

18      Nevada law implies a covenant of good faith and fair dealing in every contract. *Hilton*

19  *Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 (Nev. 1991). "Where the terms of a

20  contract are literally complied with but one party to the contract deliberately countervenes the

21  intention and spirit of the contract, that party can incur liability for breach of the implied

22  covenant of good faith and fair dealing." *Id.* "When one party performs a contract in a manner

23  that is unfaithful to the purpose of the contract and the justified expectations of the other party

24  are thus denied, damages may be awarded against the party who does not act in good faith."

25  *APCO Constr., Inc. v. Helix Elec. of Nevada, LLC*, 509 P.3d 49, 51 (Nev. 2022). "This cause of action is

26  different from one for breach of contract because it requires literal compliance with the terms of

the contract." *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019). "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.* (quotation omitted). A plaintiff may plead both breach of contract and breach of the implied covenants as alternative theories of liability, but "all elements of each cause of action must be properly pleaded." *Id.*

Chadwick next argues that he is entitled to summary judgment on Alexander's breach of implied covenant of good faith and fair dealing claim because Alexander has not produced sufficient evidence to demonstrate bad faith. ECF No. 70 at 19.

Here, Alexander alleges in his complaint that "the emails, text messages and documents exchanged between the parties, and by the acts and omissions of Defendant, and because of the reasonable reliance thereupon of Alexander, the contract between the parties was not performed by defendant in good faith, all to the detriment of Alexander." ECF No. 1 at ¶ 26. Although the allegation in the complaint is bare bones, I find that there is sufficient evidence in the record to create a genuine dispute of material fact as to whether Chadwick breached the covenant of good faith and fair dealing. Most notably, though not the only example, has been Chadwick's prolonged and repeated attempts to prevent Alexander from accessing accurate information about the accounts in which Alexander's crypto is now held. It has required repeated court orders, now well past the original discovery deadline, for Chadwick to comply with Alexander's largely reasonable discovery requests. This alone suggests an element of bad faith by Chadwick. Further, Alexander points to numerous findings in the Himonidis report and supplement that suggest discrepancies in the trading that Chadwick has yet to account for. Although I am largely denying the motions for summary judgment as premature based on the continuing investigation by Himonidis, I find that there is already sufficient information in the record to raise a genuine dispute of material fact as to whether Alexander is entitled to recover for a breach of the implied covenant of good faith and fair dealing.

Conversely, I cannot find that Alexander is entitled to summary judgment on this claim, either. Alexander argues that Chadwick violated the spirit of the contract and ultimately "everything he did was to hide the fact that he had diverted millions of dollars' worth of cryptocurrency to his own digital wallets." ECF No. 104 at 18. First, I note that, having found a breach of contract based on Chadwick's failure to provide Alexander access to the Binance account, to the extent that his breach of implied covenant of good faith and fair dealing claim is based on this breach, I deny summary judgment to Alexander, grant it to Chadwick, and dismiss the claim. *See Stebbins*, 2019 WL 281281, at *2 ("It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim."). As to the alleged theft, because additional forensic accounting is currently being conducted following the court's acceptance of the parties' joint stipulation as to the continued tracing of Alexander's cryptocurrency (ECF No. 123), and much of Alexander's evidence of this theft is reliant on accurate information presented by Himonidis about the location and movement of the cryptocurrency, I deny this portion of the motion as premature. Should Alexander seek to pursue summary judgment on this claim subject to the above findings, he may do so after the close of discovery.

### C. Breach of fiduciary duty

"[B]reach of fiduciary duty seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). "In Nevada, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). Alexander's claim alleges that there was a "special relationship" between him and Chadwick "wherein Mr. Chadwick acted in a fiduciary capacity while taking control of and trading Mr. Alexander's BTC. Mr. Chadwick owed and continues to owe fiduciary duties to Alexander, including the duties of loyalty, good faith, communication, fair dealing, and due

care." ECF No. 1 at ¶ 29. A "special relationship" is characterized by "a special element of reliance common to partnership, insurance, and franchise agreements." *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006). "In order to prove the existence of a special relationship, a party must show that (1) the conditions would cause a reasonable person to impart special confidence and (2) the trusted party reasonably should have known of that confidence." *SOC-SMG, INC. v. Christian & Timbers, LLC*, 2010 WL 11591060 at *5 (D. Nev. Feb. 4, 2010).

Chadwick argues that the only relationship between the parties was based in their contract and because "Chadwick earned substantial trading profits," there could have been no breach. ECF No. 70 at 20. Although not stated as written, it appears Chadwick intended to argue that there was no special relationship between the parties, but aside from stating their relationship was "based on contract," he provides no such argument in his motion. In Chadwick's reply, he correctly notes that Alexander's response is "cursory,"[6] but it should not be ignored that Chadwick's briefing was equally lackluster. As described, Alexander's limited response is that the parties "were, in every sense of the word, partners who owed duties to each other. Alexander trusted 250 Bitcoin to Chadwick, and Chadwick was to be transparent about the trading, and give access to the account information to Alexander." ECF No. 57 at 23. Neither party supports its positions with meaningful case law. Alexander's motion provides virtually no additional assistance to the court, restating facts but providing no case law or even argument about whether the parties had a fiduciary relationship. *See* ECF No. 104 at 19. He does argue that the fiduciary relationship was breached when "Chadwick transferred XRP crypto to his own digital wallets without disclosing and lying about the transfers and value of Alexander's cryptocurrency." *Id.*

Nevada law recognizes a fiduciary relationship between an investment advisor and an investor. *See Takiguchi v. MRI Int'l, Inc.*, 47 F. Supp. 3d 1100, 1120 (D. Nev. 2014); *see also Lagemann v. Spence*, 2020 WL 5754800, at *8 (S.D.N.Y. May 18, 2020), *report and recommendation adopted*, 2020

---

[6] *See* Reply, ECF No. 65 at 15–16.

WL 7384009 (S.D.N.Y. Dec. 16, 2020) (finding that parties "shared a fiduciary relationship where Plaintiffs entrusted [defendant] with their [cryptocurrency] investments."). I find that there is sufficient evidence from the contract alone that Chadwick, as a cryptocurrency trader, and Alexander, as an investor, had a special relationship akin to that of an investment advisor and an investor. Therefore, I find that, even in the light most favorable to Chadwick, he did owe a fiduciary duty to Alexander.

However, I am unable to reach a conclusion as to the actual profits question or whether, and to what extent, Chadwick lied about the transfers and their value at this time, and therefore deny both parties' motions as premature pending the additional discovery arising out of Himonidis's review of the account balances. Should either party seek to pursue summary judgment on this claim subject to the above findings, they may do so after the close of discovery.

**D. Fraud**

Because additional forensic accounting is currently being conducted following the court's acceptance of the parties' joint stipulation as to the continued tracing of Alexander's cryptocurrency (ECF No. 123), and much of Alexander's evidence of fraud is reliant on accurate information presented by Himonidis about the location and movement of the cryptocurrency, I deny this portion of both motions as premature. Should either party seek to pursue summary judgment on this claim subject to the above findings, they may do so after the close of discovery.

**E. Conversion**

For the same reasons set forth in the fraud section, I deny this portion of both motions as premature. Should either party seek to pursue summary judgment on this claim subject to the above findings, they may do so after the close of discovery.

**F. Declaratory relief**

Alexander seeks declaratory judgment regarding the following statements:

(1) Alexander is the sole owner of the 250 BTC in the possession and control of Chadwick;

(2)  Chadwick has failed to provide an accounting of his trading activities relating to Alexander's 250 BTC;

(3)  Chadwick has failed to return Alexander's 250 BTC and any profits as mandated under the Agreement; and

(4)  Chadwick has failed to perform under the terms of the Agreement.

ECF No. 1 at 12. Chadwick argues again that because Bitcoin is fungible, there is no "Alexander's" 250 Bitcoin. ECF No. 70 at 23. As previously discussed, the intent of this statement is obvious: Alexander seeks a return of 250 Bitcoin, the same *amount* he placed into Chadwick's care under the contract, and to which he believes he is entitled under its terms. There remains a dispute of material fact as to whether Alexander is, in fact, so entitled. Therefore, Chadwick's motion is denied as to Alexander's first claim for declaratory relief.

Chadwick also argues that he has, in fact, provided a full accounting. *Id.* Alexander claims that he has not. ECF No. 104 at 26. There appears to be a dispute of material fact as to this, although it may be resolved following the completion of Himonidis's review of Chadwick's accounts. Therefore, I deny this portion of the motions as premature, and the parties may move again for summary judgment as to the "failed to provide an accounting of his trading activities relating to Alexander's 250 BTC" issue following the close of discovery, should they find it appropriate to do so.

Chadwick also argues that where a claim for declaratory relief is merely duplicative of other causes of action asserted by a plaintiff, dismissal is proper, and Alexander's claims are simply restatements of his other claims. ECF No. 70 at 23 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 765–66 (9th Cir. 2007)). Alexander does not refute this claim in his opposition. *See* ECF No. 57 at 25. I find that Alexander's claims that Chadwick failed to return the 250 BTC and any profits and that Chadwick failed to perform under the terms of the Agreement are duplicative of his breach of contract and breach of the covenant and good faith and fair dealing claims, so summary judgment is granted to Chadwick on these two claims.

In his motion for summary judgment, Alexander appears to alter his request for declaratory relief to one for "a declaration from the court that Chadwick breached the Bitcoin Trading Agreement, that the default provision is enforceable, and that Alexander not only has the right for his 250 to be returned, but also that its value is now more than $24 Million." ECF No. 104 at 25. The initial claim, that "Chadwick breached the Bitcoin Trading Agreement" is duplicative of the breach of contract claim. To the extent that Alexander seeks for 250 Bitcoin to be returned (as opposed to *his* 250 Bitcoin), this is duplicative of the damages portion of his breach of contract claim. However, for reasons explained above,[7] I have already found that the default provision is enforceable against Chadwick.

Finally, his claim for $24 million is not in his complaint. A plaintiff generally may not advance a new claim at the summary judgment stage. *See Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1296–97 (11th Cir. 2006); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000). If a plaintiff wishes to pursue a new claim, the proper procedure is to file an amended complaint prior to summary judgment. *See Hurlbert*, 439 F.3d at 1297; *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1132 (C.D. Cal. 2013).[8] I find that this claim for declaratory relief, having not been sought in Alexander's complaint, cannot be advanced in this motion. Therefore, to the extent that Alexander seeks declaratory relief that the value of his 250 Bitcoin investment is now more than $24 Million, not only is summary judgment denied, but I decline to find this is relief sought by Alexander in the current operative complaint.

### G. Accounting

Chadwick argues that accounting is remedy and does not serve as a separate claim. ECF No. 70 at 24 (citing *In re Nat'l Audit Def. Network*, 332 B.R. 896, 919 (Bankr. D. Nev. 2005)). He states that because his is not a fiduciary, this equitable remedy is not available. *Id.* (citing *In re*

---

[7] *See supra* at pp. 7–8.

[8] Counsel is reminded they must comply with the Federal Rules of Civil Procedure and the Local Rules when seeking to amend a complaint.

*National Audit Defense Network*, 332 B.R. at 919 ("The cause of action for an accounting is a restitutionary remedy. . . . Its origins are ancient and in equity, where among other things it served the function of compelling fiduciaries to account to their beneficiaries for any profits."). However, as discussed previously, Chadwick is, in fact, a fiduciary. In Alexander's motion, he argues that Chadwick, as a fiduciary and someone with whom the relationship was founded in trust and confidence, Chadwick has a duty to render an accounting to him to determine damages resulting from "any misallocation of funds."

Because additional forensic accounting is currently being conducted following the court's acceptance of the parties' joint stipulation as to the continued tracing of Alexander's cryptocurrency (ECF No. 123), and whether or to what extent there has been any misallocation of funds depends on accurate information presented by Himonidis about the location and movement of the cryptocurrency, I deny this portion of both motions as premature. Should either party seek to pursue summary judgment on this claim subject to the above findings, they may do so after the close of discovery.

### H. Replevin

"[R]eplevin lies to recover personal property unlawfully detained." *Azparren v. Ferrel*, 191 P. 571, 572 (Nev. 1920). Chadwick claims that the cryptocurrency has not been unlawfully detained. ECF No. 70 at 24–25. Alexander claims that it is. ECF No. 104 at 23–24. For the same reasons set forth in the fraud section, I deny this portion of both motions as premature. Should either party seek to pursue summary judgment on this claim subject to the above findings, they may do so after the close of discovery.

### I. Unjust enrichment and constructive trust

Unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (internal quotation marks omitted). "Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to

another." *Unionamerica Mortg. & Equity Tr. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981). "Benefit in the unjust enrichment context . . . denotes any form of advantage, and is not confined to retention of money or property." *Certified, Fire Prot., Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 257 (Nev. 2012) (alteration and internal quotation marks omitted).

Chadwick argues that the facts do not demonstrate that he retained a benefit under inequitable circumstances, "[r]ather, Chadwick is holding cryptocurrency that he traded pursuant to the Agreement" and has offered to distribute it to Alexander. ECF No. 70 at 27. Chadwick also argues that unjust enrichment is not available if the plaintiff has an adequate remedy at law, and because the parties entered into an express contract, he is not entitled to recover for unjust enrichment. *Id.* (citing *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.")). In response, Alexander does not engage with this latter argument, stating only that "[u]njust enrichment will be proven as access is given to the Binance account and cold wallet. If there is nothing to hide, and Chadwick has not retained or transferred what is owed to Alexander, then Chadwick should have no problem given full independent access to Alexander." ECF No. 57 at 26. In his own motion for summary judgment, Alexander does not engage with this issue either. *See* ECF No. 104 at 27–28.

Although Chadwick's first argument is contingent on the additional discovery, I find that the existence of the express agreement is sufficient to bar an unjust enrichment claim. *See Leasepartners Corp.*, 942 P.2d at 187 ("The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." (quoting 66 Am. Jur. 2d Restitution and Implied Contract § 11 (1973))). Therefore, I grant Chadwick's motion and deny Alexander's motion for summary judgment on the unjust enrichment claim.

Alexander's constructive trust claim appears to be based on his unjust enrichment claim. Under Nevada law, "[a] constructive trust is a remedial device by which the holder of legal title to property is held to be a trustee of that property for the benefit of another who in good conscience is entitled to it." *Klabacka*, 394 P.3d at 953 (quoting *Locken v. Locken*, 650 P.2d 803, 804–05 (Nev. 1982)). "A constructive trust will arise and affect property acquisitions under circumstances where: (1) a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice." *Locken*, 650 P.2d at 806.

In addition to his objections to the unjust enrichment claim, Chadwick argues that no confidential relationship existed between the parties. ECF No. 70 at 26. As previously discussed, this remains a dispute of material fact. Therefore, to the extent—and only to the extent—that the constructive trust claim can survive independent of the unjust enrichment claim, summary judgment to Chadwick is denied.[9]

IV.    **Conclusion**

IT IS THEREFORE ORDERED that Chadwick's motion for summary judgment **[ECF No. 70]** and Alexander's motion for summary judgment **[ECF No. 104] are each granted in part, denied in part, and denied as premature** in part as follows:

(1)    Regarding Alexander's breach of contract theories:

a.    As to Alexander's "refusing to share trading profits" theory of contract breach, **summary judgment is denied.**

b.    As to Alexander's "failing to keep the profit within the Binance trading account" theory of contract breach, **I grant summary judgment to Chadwick and dismiss this theory.**

---

[9] Because this issue was not otherwise briefed, the court does not reach a conclusion on the merits of this issue.

c. As to Alexander's "failing to provide monthly summary of account value, including increases and losses against the principal Bitcoin amount" theory of contract breach, **summary judgment is denied.**

d. As to Alexander's "failing to distribute profits upon request by Alexander after ninety days of trading" theory of contract breach, **summary judgment is denied.**

e. As to Alexander's "failing to return the original 250 BTC to Alexander as demanded" theory of contract breach, **summary judgment is denied.**

f. As to Alexander's "failure to generate positive returns each month" theory of contract breach, **summary judgment is denied.**

g. As to Alexander's "improperly converting Bitcoin to other cryptocurrencies" theory of contract breach, **summary judgment is denied.**

h. As to Alexander's "failure to provide access to the Binance account" theory of contract breach, **I grant summary judgment to Alexander**, finding that, even in the light most favorable to Chadwick, this constituted a breach of the Agreement. Further, **Alexander is entitled to damages as set forth in the default provision.**

(2) Regarding Alexander's breach of the covenant of good faith and fair dealing claim:

a. To the extent that his breach of implied covenant of good faith and fair dealing claim is based on the "failure to provide access to the Binance account," **it is dismissed.**

b. To the extent that it is *not* based on the "failure to provide access to the Binance account" theory, **I deny summary judgment to Chadwick and deny as premature summary judgment to Alexander.**

(3)    Regarding Alexander's breach of fiduciary duty claim, I find that Chadwick and Alexander had a fiduciary relationship but nonetheless **deny summary judgment to both parties as premature.**

(4)    Regarding Alexander's fraud claim, **I deny summary judgment to both parties as premature.**

(5)    Regarding Alexander's conversion claim, **I deny summary judgment to both parties as premature.**

(6)    Regarding Alexander's requests for declaratory relief:

    a.    As to the statement that "Alexander is the sole owner of the 250 BTC in the possession and control of Chadwick," **I deny summary judgment to Chadwick.**

    b.    As to the statement that "Chadwick has failed to provide an accounting of his trading activities relating to Alexander's 250 BTC," **I deny summary judgment to both parties as premature.**

    c.    As to the statement that "Chadwick has failed to return Alexander's 250 BTC and any profits as mandated under the Agreement," **I grant summary judgment to Chadwick.**

    d.    As to the statement that "Chadwick has failed to perform under the terms of the Agreement," **I grant summary judgment to Chadwick.**

    e.    As to the statement that "Chadwick breached the Bitcoin Trading Agreement," **I deny summary judgment to Alexander and dismiss this request as duplicative.**

    f.    As to the statement that "the default provision is enforceable," I deny summary judgment to Alexander and dismiss this request as moot.

g.   As to the statement that "Alexander not . . . has the right for his 250 to be returned," **I deny summary judgment to Alexander and dismiss this request as duplicative.**

h.   As to the statement that the 250 Bitcoin "is now more than $24 Million[,]" **I deny summary judgment to Alexander and dismiss this request as procedurally improper.**

(7)   Regarding Alexander's requests for an accounting, **I deny summary judgment to both parties as premature.**

(8)   Regarding Alexander's requests for replevin, **I deny summary judgment to both parties as premature.**

(9)   Regarding Alexander's unjust enrichment claim, **I grant summary judgment to Chadwick and dismiss this claim.**

(10)   Regarding Alexander's constructive trust claim:

a.   To the extent that the constructive trust claim is based on the unjust enrichment claim, **summary judgment is granted to Chadwick and this claim is dismissed.**

b.   To the extent that the constructive trust claim can survive independent of the unjust enrichment claim, **summary judgment to Chadwick is denied.**

IT IS FURTHER ORDERED that Chadwick's motion to strike **[ECF No. 96] is denied as moot.**

This matter is referred to the magistrate judge for a settlement conference. LR 16-5.

Dated: June 16, 2025

_____
Cristina D. Silva
United States District Judge